409 So.2d 383 (1982)
Kathleen Vick, Wife of/and Kendall VICK
v.
NATIONAL AIRLINES, INC.
No. 12356.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1982.
*384 Patrick M. Reily, New Orleans, for plaintiffs-appellees.
Deutsch, Kerrigan & Stiles, Frederick R. Bott, New Orleans, for defendant-appellant.
Before SAMUEL, GULOTTA and BARRY, JJ.
GULOTTA, Judge.
In this breach of contract suit, the trial judge awarded plaintiffs, Kathleen and Kendall Vick, $2,500.00 each "for their pain and suffering, mental anguish, inconvenience and inability to carry out their vacation plans" because of defendant's failure to fly them non-stop from New Orleans to Miami, the first leg of the Vicks' vacation trip. The trial court further granted judgment in the amount of $507.40 to compensate plaintiffs for out-of-pocket expenses incurred in connection with their abandoned vacation. We affirm.
The undisputed testimony[1] was that Mr. and Mrs. Vick had planned a vacation in December, 1977. They purchased tickets for a non-stop National Airlines flight from New Orleans to Miami on December 17, 1977. At Miami, the Vicks planned to board a connecting flight on another airline to the Caribbean.
The Vicks arrived at the New Orleans airport in time for an 8:40 a. m. departure. Their plane was scheduled to arrive in New Orleans earlier from Tampa after making a stop in Pensacola en route to New Orleans before its non-stop flight from New Orleans to Miami. Because of bad weather conditions, the plane was unable to make a stop in Pensacola, and arrived three hours late in New Orleans. The Vicks left New Orleans under the impression that they were flying non-stop to Miami (as ticketed) and could still make their connecting flight to the Caribbean, despite the delay.
En route, without having been informed beforehand, the Vicks learned of a Pensacola stop, apparently to allow passengers on the earlier flight from Tampa to disembark and to pick up new passengers flying from Pensacola to Miami.
The plane landed in Pensacola under extreme weather conditions. Mr. Vick testified that the flight into Pensacola was "incredibly rough" and "like a roller coaster". Mrs. Vick testified that, because of prior experiences, flying in bad weather affects her emotionally and that the flight to Pensacola was "terrible" as they "bumped and bounced the entire way."
After landing in Pensacola, the plane was additionally delayed over two hours because of inclement weather before departing for Miami. During the lay-over, Mrs. Vick became nervous because of the rough landing, the bad weather, and a lack of information from National personnel concerning their takeoff time and connecting flight. When it became apparent that it was impossible to make the connecting flight in Miami, and, in view of the uneasy flying conditions, Mrs. Vick decided to get off the plane and drive to Miami in a rented car. Mr. Vick decided to continue on the flight to Miami and meet Mrs. Vick there the following day to make new arrangements for continuing to the vacation spot.
Mr. Vick testified that upon landing in Miami after an uneventful flight, there was "chaos and confusion" as irate passengers who had missed connecting flights attempted to see a "very few" National agents to arrange alternate accomodations. Vick testified *385 that "people were five deep shouting at the ticket agents" and that he waited in line to speak with an agent. After failing to obtain help from National personnel, Vick tried to check into a hotel across the airport concourse from the ticket counter but there was no vacancy. He then went to the Antilles Airline counter (his connecting airline for the continuation of his flight) and learned that he could not get a flight to the Caribbean either that night or the next day. He thereupon decided to return to New Orleans and left within an hour.
In the meantime, Mrs. Vick, after leaving the Pensacola airport, drove toward Miami in a rented car. Upon arrival in Tallahassee she attempted to call her husband at the Miami Airport and nearby hotels but could not reach him. After staying in a motel she was able to talk to her husband the next morning and learned that he had returned to New Orleans. She then drove to Tampa, boarded a plane and returned home.
Appealing, National contends that plaintiffs' cause of action is in contract and they are restricted to the $507.40 out-of-pocket claimed loss. Alternatively, defendant contends, the Vicks were guilty of causing their own problems by Mrs. Vick's decision to leave the plane in Pensacola and drive to Miami and by Mr. Vick's "abrupt departure" for New Orleans after arriving in Miami. According to defendant, these actions by the Vicks were the cause of their vacation's cancellation. National further argues that any award for inconvenience should be "very nominal" in the range of $250.00 instead of the $2,500.00 amount awarded each plaintiff by the trial court. We disagree.
The undisputed evidence supports the trial judge's conclusion that defendant breached its contract to fly plaintiffs non-stop from New Orleans to Miami. It is clear from the record that plaintiffs attempted to find alternate means to make a connecting flight in Miami to the Caribbean and we cannot say that either their attempt or their decision to return home was unreasonable. As the trial judge pointed out in well-written reasons for judgment:
"The Court finds from the evidence that defendant agreed to fly plaintiffs non-stop to Miami, in order for plaintiffs to make connection with another airline to take them to their destination, where they intended to spend their vacation. Defendant knew of plaintiffs' plans and of the connections which had to be made, in order for plaintiffs to reach their destination.
Instead of carrying out its contract, defendant chose to fly its planein the face of very bad weatherto Pensacola. The plane descended in Pensacola and remained grounded long enough to make it impossible for plaintiffs to make their plane connections, and thus to reach their ultimate destination.
Both plaintiffs made every effort to reach their destination by other means, without success. In desperation, they were forced to return to New Orleans, thus destroying all plans for their long-prior-arranged vacation."
We adopt these reasons.
We further find no error in the award of damages for plaintiffs' "pain and suffering, mental anguish, inconvenience and inability to carry out their vacation plans". Non-pecuniary damages for mental distress are available in actions for breach of contract if the contract has as a principal object the gratification of some intellectual enjoyment. See LSA-C.C. Art. 1934(3); Gele v. Markey, 387 So.2d 1162 (La.1980); Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976); Elliott v. Louisiana Intrastate Gas Corp., 390 So.2d 571 (La. App. 3rd Cir. 1980). Defendant's contract to transport plaintiffs non-stop from New Orleans to Miami was the first leg of plaintiffs' Christmas vacation to the Caribbean. The flight was a sine qua non of this vacation package. We conclude that the flight had for its object (as part of a vacation) the gratification of plaintiffs' intellectual enjoyment.[2] *386 Accordingly, we hold plaintiffs are entitled to damages.
Despite our holding, we do not mean to imply that any airline passenger who misses a connecting flight is entitled to recovery from the airline. We are aware that missed flights occur from time to time and that the airlines provide passengers with hotel accommodations or alternate flights to rectify the travelers' problems. We are also aware of the problems and delays caused by bad weather; however, the Vicks purchased tickets for a non-stop flight but were not informed beforehand of National's decision, for business reasons or otherwise, to change the flight plan. Plaintiffs were subjected to an unscheduled stop and delay in Pensacola under adverse weather conditions and were not afforded reasonable assistance by National personnel either there or in Miami to arrange alternate accommodations. Defendant's failure was in not adequately informing plaintiffs of the changed flight schedule and in being callous to the problems caused by the delays and the airline's decision to make an unannounced stop in Pensacola. Plaintiffs are entitled to recovery.
Finally, considering the problems, anxiety and inconvenience suffered by plaintiffs, we cannot say the amount awarded is an abuse of the trial court's discretion.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] Plaintiffs alone testified. Defendant introduced no evidence.
[2] LSA-C.C. Art. 1934(3) provides:

"3. Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule."